## ROCHESTER *vs.* WHITEHOUSE.

Where, under an agreement by a creditor to accept from his debtor, in payment of the debt, property at an appraised value, appraisers are appointed, their authority may be revoked *as in the case of a submission to arbitration*, and such revocation may be made orally, though the appointment was in writing but not under seal.

Where in such case the creditor is a town, the selectmen may make such revocation for the town, although the debtor's proposition to pay his debt in that mode was accepted by vote of the town, and the selectmen were instructed to carry the vote into effect, and appointed appraisers accordingly.

It is not a good plea to a writ of entry by a mortgagee against a mortgager, that the mortgagee had agreed, *puis darrein continuance*, to accept, in payment of the mortgage debt, property of the mortgager at a value to be fixed by appraisement, and that the property was appraised accordingly at a value greater than the amount of the debt, and that the mortgager had tendered a conveyance thereof to the mortgagee, which was refused by him.

Where to such a plea there was a replication of a revocation of the authority of the appraisers, and a rejoinder traversing such revocation, and issue joined thereon, and a verdict for the plaintiff—*Held*, that the issue was immaterial; but, as the plea itself admitted the cause of action, that there must be judgment for the plaintiff.

WRIT OF ENTRY, for certain land and mills, situate in said Rochester, commenced January 2, 1843, in which the plaintiffs counted on a seizin in fee and in mortgage. The defendant pleaded, in substance, that since the last continuance of the action, the town and he had agreed that the mortgage debt should be paid in the following manner, viz : in his property to be by him shown to the town and appraised, and immediate possession given, and the same taken by the town at the appraisal, in payment of the debt ; that he did show such property, to wit, an equity of redemption in certain real estate, which was appraised according to agreement, at an amount larger than the mortgage debt, and a conveyance thereof by him tendered to the town, and by the town refused.

The plaintiffs, after protesting, &c., replied that before the appraisal, and before notice of it, the town revoked the authority of the appraisers. The defendant's rejoinder traversed such revocation, and issue was joined thereon.

The defendant showed that at meetings of the town, regularly

holden, on the 15th and 31st days of March, 1843, upon the 9th article in the warrant for said meetings, in the following words, viz : " To see what method the town will take in relation to the collection of the surplus revenue," the following proceedings were had, viz : " *Voted,* that the agent, having in charge the surplus revenue, be instructed to ascertain as near as may be, what the demands could be sold for, and report at the adjourned meeting." The agent reported " that he presumed he could not find a purchaser unless it was the original payor, and that there is three years interest due the town. Original claim, $3000." The defendant then made a proposition to the town, to pay the note the town held against him in property at the appraisal of three disinterested appraisers ;" and the town thereupon passed certain votes accepting the proposition, which are more particularly set forth in an agreement entered into between the selectmen and the defendant, April 10, 1843, of which the following is a copy, viz :

" *To Andrew E. Demeritt, of Lee, and Elijah Austin, of Madbury.* Whereas the legal voters in the town of Rochester, at a town-meeting, holden on the 31st day of March last past, voted to accept the following proposition, made to said town in relation to the payment and discharge of a note due said town from N. V. Whitehouse, to wit : ' N. V. Whitehouse proposes to the town of Rochester to shew them property sufficient to pay the note which said town holds against him, at the appraisal of three disinterested appraisers ;' " and also passed the following votes in relation to the payment of said note, viz : ' *Voted,* to have three appraisers chosen ; one by the selectmen, one by N. V. Whitehouse, and a third agreed on by the two appraisers thus chosen ; who shall appraise property to be shewn them by said Whitehouse sufficient to pay said Whitehouse's note to the town, and said Whitehouse to give the town immediate possession of said property. If said Whitehouse does not shew said appraisers property sufficient in their estimation to pay said note, then the appraisers shall appraise all the property shewn them, and the town shall have possession of the same immediately, and the said Whitehouse shall be holden for the deficiency.'

' 2d. *Voted*, that the selectmen be instructed to carry the above vote into effect, and that the said property be appraised within thirty days.'

" Now, in pursuance of the proposition and votes aforesaid, we, the undersigned, selectmen of the town of Rochester, and the said N. V. Whitehouse, have chosen you, the said Andrew E. Demeritt and Elijah Austin, to be appraisers according to said proposition and votes ; and we mutually request you to appoint a third appraiser, and with him go on and appraise such property as the said Whitehouse shall shew you, and make a written report of your said appraisal, and furnish each party with a copy of the same within thirty days from the said 31st day of March last past.

And we, the undersigned selectmen, and N. V. Whitehouse, do farther request you, and the third appraiser whom you may appoint, as soon as may be convenient, to notify us, the said selectmen and N. V. Whitehouse, of the time when you will attend to said appraisal." (Signed by the selectmen of Rochester, and by the defendant.)

"Rochester, April 10th, 1843."

The appraisers thus chosen appointed Winthrop Smith to be the third appraiser.

The plaintiffs then proved that on the second day of the meeting of the appraisers and the defendant and the selectmen of Rochester, W. A. Marston, Esq., attended as counsel at the request of said selectmen, and on their behalf gave notice to the appraisers " that the town did not feel like being a party to an appraisal of such land as was offered by the defendant; that they would recognize no seeming authority, but revoked it and withdrew, and would have nothing more to do with the appraisal of the land ;" that Whitehouse was present ; and that it was admitted that the property was incumbered by mortgage.

To show how far the parties had proceeded before the above notice was given, the defendant called one of the appraisers, who testified that after receiving the written agreement, or commission, he and the other appraisers met the parties on the 21st of

Rochester *v.* Whitehouse.

April, 1843 ; that the defendant inquired of the selectmen what property they expected him to turn out to them, and they replied, " the mortgaged property ;" to which he replied he was willing, and showed the property which was subsequently appraised, and which was the same property mortgaged by him to the town, and that the same was examined by the appraisers ; that some time in the course of the day, and as he thought after the property had been exhibited and examined, the selectmen made some objections to taking it, saying that the mortgages were to be cleared, and asked the postponement of the business until the next day, to obtain counsel, and his impression was, to examine the records ; that after the selectmen the next day gave notice that they revoked, Whitehouse insisted on the appraisers going on ; that they appraised the property, subject to certain mortgages to Woodman and the Savings Bank.

It was agreed that the $3000 note of Whitehouse, mentioned in the plea, was given for a part of the surplus revenue of the town, borrowed by him.

A verdict was taken, by consent, in favor of the plaintiffs, upon the issue joined by the parties, which is to be set aside and a verdict entered upon said issue in favor of the defendant, if in the opinion of the court such a verdict should have been rendered by the jury upon the foregoing evidence. And such judgment to be rendered by the court upon the whole record as the law may require.

*C. W. Woodman,* (with whom were *James Bell, R. Kimball,* and *Christie,*) for the defendant, contended that the town had no right to revoke ; that if the town had the right, the selectmen had no authority to exercise that right ; that this was the substitution of one contract for another, and not a submission to arbitration ; 2 *Bouvier's Law Dict.* 368, *Revocation ;* 2 *Keble* 79 ; and that as the submission was in writing, it could not be revoked orally.

*I. Bartlett,* (with whom were *Hale* and *Wiggins,*) for the plaintiffs. The plea furnishes no answer to the action.

Towns have no authority to make such an agreement as the one set up. · It amounts to a purchase of real estate.

An equity of redemption was not "property," within the meaning of the votes of the town. Whitehouse could not give such an immediate possession of an equity as was stipulated for.

A submission not under seal may be revoked by parol. *Watson on Awards* 9 ; *Vynior's Case*, 8 *Coke* 162 ; 1 *Conn.* 335 ; 16 *Johns.* 205, *Allen*' vs. *Watson.*

PARKER, C. J. The agreement stated in the plea did not constitute a technical submission to arbitration. *Kyd on Awards* 6. It was a contract to receive certain real estate in payment of a debt, at the appraisal of persons to be appointed with authority to make the appraisal. The case therefore is not technically within the rule of law which authorizes a party to a submission to revoke the authority of the arbitrators. But the principle upon which that rule is founded has a broader application. There may be a revocation of authority other than that given to arbitrators to make an award. The town could revoke the authority of the persons appointed to appraise the property, and refuse to proceed farther. "All kind of authority is in its nature revocable." *Kyd on Awards* 29. A party may revoke an authority to one to be his factor. 4 *Co. Rep.* 163, *Vynior's Case.* In general, the principal has a right to determine or revoke the authority given to his agent, at his own mere pleasure ; for since the authority is conferred by his mere will, and is to be executed for his benefit, and his own purposes, the agent cannot insist upon acting, when the principal has withdrawn his confidence and no longer desires his aid. *Story on Agency*, § 463. Although the contract is not technically a submission to arbitrators, because there was no matter of difference or question of right between the parties submitted to the appraisers, and they were not to make an award, they had an authority conferred upon them by the agreement, in the nature of that given by a submission, which constituted them the agents of the parties to do certain things, and the case is within the principle which authorizes the revocation of the authority conferred.

The selectmen are the general agents of the town. They are to "manage all the prudential affairs of the town." *Rev. Stat.*, *ch.* 34, § 2, and, by special vote, in this case they were to choose the appraisers. If they had refused to proceed, no appraisers would have been chosen, and nothing farther could have been done. They were to carry the agreement into execution. Their acceptance of a deed from the defendant, after an appraisal, would have bound the town. If they refused to complete the contract it could not be carried into effect. As the general agents of the town, then, they had power to refuse to proceed ; and they did so, by what was in form a revocation of the authority of the agents. Their act in this particular was the act of the town, and the issue is, therefore, rightly found for the plaintiffs. The issue whether there had been a revocation, is not an issue of law, but of fact.

The plaintiffs are entitled to judgment in another view of the case. The contract was executory. It would not have been executed and the plaintiffs' debt discharged, except by their receipt of the property in payment at the appraisal. This the selectmen refused to do, and the plaintiffs' debt, upon which this action is founded, has therefore never been satisfied. "A negotiable note was made to the plaintiff by the defendant, who held a note made by the plaintiff, but had it not with him at the time, and it was agreed that the two notes should be set off, one against the other, so far as the smaller would pay the larger. It was held, that this agreement was executory, and therefore was not an extinguishment of the smaller note." 14 *Pick. R.* 315, *Carey* vs. *Bancroft.* The plea shows the nature of the contract, from which it appears that it was executory, and it avers that the tenant, in pursuance and performance of the agreement and appraisal, tendered to the demandants a good and sufficient conveyance of the land, and tendered and offered to them possession thereof, which the demandants refused. It appears, then, from the plea itself, that what is relied upon and set forth in the plea furnishes no defence ; and if the verdict had been for the defendant, the plaintiffs on these pleadings must have been entitled to judgment *non obstante.* The issue whether there was a revocation of the au-

thority of the appraisers, would in that view be immaterial, but there could not be a repleader, because the matter of the plea shows that no other issue could avail. 1 *Chitty's Pl.*, *ch.* 9 ; 1 *Levinz Rep.* 32, *Serjeant* vs. *Fairfax ; Willes Rep.* 532, *Parnham* vs. *Pacey*, *note.* The court are bound to give such judgment as appears upon the whole record to be proper, without regard to the issues found. 4 *East Rep.* 502, *Le Bret* vs. *Papillon.* The refusal to proceed and complete the contract may be such a breach of it as will entitle the defendant to an action for damages, but that is a different thing from an actual appropriation of the property in payment.

*Judgment for the plaintiffs.*